IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KIMBERLY SCHUBIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:22-cv-1257 (RDA/WEF) |
| ) | |
| AXSEUM, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant's Partial Motion to Dismiss. Dkt. 6. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered Defendant's Partial Motion to Dismiss and Supporting Memorandum (Dkt. Nos. 6; 7), together with Plaintiff's Opposition (Dkt. 11) and Defendant's Reply Memorandum (Dkt. 13), this Court GRANTS the Motion for the following reasons.

I. BACKGROUND

A. Factual Background[1]

Plaintiff Kimberly Schubin is a former female employee of Defendant Axseum, Inc. Dkt. 1 ¶ 3. Axseum is a government contracting agency. In bringing this suit against Axseum, Schubin alleges an array of grievances from her time as an employee until the termination of her employment. *Id.* ¶¶ 17, 65.

---

[1] For purposes of considering this instant Motion, the Court accepts as true all facts contained within Schubin's Complaint (Dkt. 1) as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

Schubin began working with Axseum on October 1, 2006 as a Program Manager. *Id.* ¶ 17. She started working as a part-time, hourly employee who made $50 per hour and reported directly to Michael Perez, the CEO. *Id.* A few months beforehand, Axseum hired a male employee named Richard Cashman as a Business Development/Proposal Manager at a salary of $74,000 per year. *Id.* ¶ 19. Eventually, in 2011, Schubin's hourly pay rose to $55 per hour when she was promoted to a full-time position as the Director of Operations. *Id.* ¶ 26. That same year, Perez hired his brother-in-law, Hans Waschitzki. *Id.* Waschitzki, despite having no prior experience in the government contracting industry, started at a salary of $125,000 per year. *Id.* A month after Waschitzki was hired, Schubin became a salaried employee and earned the same amount as him. *Id.* ¶ 27. From this point on, Schubin's salary and bonuses remained the same as Waschitzki's and never equaled or exceeded the salary of Cashman. *See, e.g.*, *id.* ¶¶ 33, 40.

Perez persistently dodged Schubin's requests for raises. When Schubin would ask Perez for a raise, he would respond by stating that the company was "tight on funds." *Id.* ¶ 30. He would also respond by presenting Schubin with an ultimatum: she could either increase her personal salary or the pay of the employees she managed. *Id.* Schubin believes that Perez gave this ultimatum knowing that Schubin would want to award her employees a higher salary, thus causing her to back down on her requests. *Id.* Finally, throughout Schubin's employment, Perez espoused his belief that a "head of household" should make more than someone who is not. *Id.* ¶ 31. He also noted that because Schubin's husband was a military officer, it was not important for Schubin to make a lot of money. *Id.*

The early 2010s marked a turning point for both parties. From 2012 to 2013, Axseum promoted Schubin to COO and Waschitzki to CFO. *Id.* ¶¶ 29, 33. However, in 2014, Axseum began losing its overseas contracts. *Id.* ¶ 34. At the same time, Perez started making a series of

poor financial decisions which affected the financial health of Axseum. *Id.* ¶ 45. For example, Perez pulled money out of the company's earnings for personal use rather than reinvesting those funds. *Id.*

In 2016, Perez and Schubin's relationship worsened after Schubin earned her MBA. *Id.* ¶ 35. Axseum did not reward Schubin with a salary increase, and Schubin continued to earn the same amount as Waschitzki, who did not have an MBA. *Id.* ¶ 39. Moreover, after Schubin received her degree, Perez began treating her differently. *Id.* ¶ 43. For instance, Perez would attempt to emphasize he knew more than her, yell at her, or make inappropriate remarks to her when Schubin informed him of company problems. *Id.*

By the middle of 2021, Axseum was in a dire financial situation, as it was projected to run out of money within a few months. *Id.* ¶ 50. Accordingly, Perez agreed to sell the company to an interested buyer. *Id.* ¶ 51. However, the night before the closing, an issue with finances occurred, and Perez accused Schubin, Waschitzki, and the buyer of trying to steal the company from him. *Id.* ¶ 53. After a series of back-and-forths, Schubin and Waschitzki agreed to sign separation agreements at a later date. *Id.* ¶ 58. Yet, the night before Schubin's agreement was to be signed by the parties, Perez fired Schubin via text message. *Id.* ¶ 61.

### B. Procedural Background

Schubin initiated this suit by filing her Complaint on November 4, 2022. Dkt. 1. In turn, Axseum filed its Answer alongside a Partial Motion to Dismiss on January 3rd, 2023. Dkt. Nos. 5; 6. In that Partial Motion, Axseum only moved to dismiss Schubin's hostile work environment claim. Dkt. 7. Schubin responded by filing a Memorandum in Opposition on January 17, 2023. Dkt. 11. Thereafter, Axseum filed a Reply Memorandum in Support of its Partial Motion to Dismiss on January 23, 2023. Dkt. 13.

## II. STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In reviewing a Rule 12(b)(6) motion, the Court "must accept as true all the factual allegations contained in the complaint," drawing "all reasonable inferences" in favor of a plaintiff. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citation omitted). To be sure, "the [C]ourt 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). In general, the Court may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## III. ANALYSIS

In her Complaint, Schubin brings a claim for, *inter alia*, hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. Schubin relies on three main factual allegations to support her claim. First, Schubin alleges that Axseum suppressed her salary in comparison to her male counterparts. *See, e.g.*, Dkt. 1 ¶¶ 33, 40. Second, Schubin alleges that Perez commented on how a head of household should earn more than someone who does not serve that role. *Id*. ¶ 31. Third, Schubin describes how Perez would become aggressive with Schubin

by yelling at her and accusing her of trying to steal the company right before she was fired. *Id.* ¶¶ 43, 53.

Axseum has moved to dismiss only that claim. It argues that Schubin has failed to plead a *prima facie* case for hostile work environment. Specifically, Axseum argues that Perez's conduct was not based on sex, that it was not severe or pervasive, and that it is not imputable to the company. Axseum also argues that the Court should not consider paragraphs seventeen through forty-nine of Schubin's Complaint in ruling on the Motion because they are time-barred by the statute of limitations.

In response, Schubin argues that she has sufficiently pleaded that Perez's conduct was motivated by her gender and that the conduct was sufficiently severe and pervasive. Schubin also proposes that the continuing violation doctrine saves paragraphs seventeen through forty-nine from being time-barred.[2]

A. Hostile Work Environment Claim

The Court begins by clarifying which factual allegations are relevant to Schubin's hostile work environment claim. Hostile work environment claims generally cover a wide array of sexual, physical, and verbal harassment. *See, e.g.*, *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 332-34 (4th Cir. 2011) (holding a reasonable juror could find a hostile work environment where plaintiff's male coworkers displayed sexualized photos of women and left tampons on her truck); *EEOC v. R&R Ventures*, 244 F.3d 334, 337, 340 (4th Cir. 2001) (holding that a reasonable juror could find a hostile work environment where plaintiff's male manager would comment on the size of her breasts or make other sexual comments). Here, in support of her hostile work environment claim,

---

[2] Given that the Court grants Axseum's Motion to Dismiss, the Court will not need to address Axseum's arguments that Perez's conduct is not imputable to the company and that some of Schubin's allegations fall outside the statute of limitations.

Schubin points to the fact that Axseum suppressed her salary because of her sex.  To be sure, disparate pay constitutes a form of discrimination; however, case law indicates that when a plaintiff's complaint contains both hostile work environment and disparate pay claims, the disparate pay allegations are not a predicate for the hostile work environment claim.  *See Watson v. Va. Dep't of Agric. & Consumer Servs.*, No. 3:19-cv-466, 2020 WL 1237012, at *5-6 (E.D. Va. Mar. 12, 2020) (keeping the factual allegations for plaintiff's hostile work environment claim distinct from their disparate pay claim).  Put differently, a hostile work environment claim requires different factual proof than a sex discrimination claim.  For this reason, the Court does not consider the allegation that Axseum suppressed Schubin's salary as a form of unwelcome conduct.  *See Taylor v. Millennium Corp.*, No. 1:15-cv-1046, 2016 WL 927185, at *8 (E.D. Va. Mar. 4, 2016) (dismissing plaintiff's hostile work environment claim since plaintiff presents no relevant case law in which disparate pay alone served as a basis for the claim).

The Court must now determine if Schubin's two remaining factual allegations support a hostile work environment claim.  To sufficiently plead a hostile work environment claim, Schubin must allege that (1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer.  *Crockett v. Mission Hosp., Inc.*, 717 F.3d 348, 354 (4th Cir. 2013).  Axseum contends that Schubin fails to sufficiently plead the second, third, and fourth elements.  Axseum does not contest the first element, so the Court's analysis will focus on the remaining elements.

### 1. Element Two: Based on Sex

Axseum asserts that Schubin failed to show that the unwelcome conduct was based on sex. Moreover, it argues that Schubin lacks connective facts between Perez's head of household

comment and his treatment of Schubin.  Similarly, Axseum also argues that Schubin fails to allege that she was yelled at because of her sex, as evidenced by the fact that another male employee was also accused of stealing the company.

To plead that unwelcome conduct was based on sex, a plaintiff must allege "that her protected characteristics under Title VII was the 'but for' cause of the alleged harassment." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 210 (4th Cir. 2022).  In other words, a plaintiff must show that she would not have been subjected to harassment, if not for her sex.  For example, harassment which includes "explicit and derogatory references to women" is sufficient to establish but-for causation.  *Miller v. Washington Workplace, Inc.*, 298 F. Supp. 2d 364, 374 (E.D. Va. 2004) (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000)) (finding sufficient basis in sex where the defendant commented on plaintiff's breasts and asked her about her sex life); *cf. Engler v. Harris Corp.*, No. GLR-11-3597, 2012 WL 3745710, at *5 (D. Md. Aug. 28, 2012) (finding an insufficient basis in sex for conclusory allegations that male employees made hostile and rude remarks).

At least one action that was directed at Schubin was "based on sex."  Specifically, Schubin alleges that Perez told her that a "head of household" should make more than someone who is not.  *Id.* ¶ 31.  It is reasonable to infer that that comment was based on sex because it invokes the stereotype that women do not serve as the family's breadwinner.  *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("A trier of fact might reasonably find [sex-based discrimination], if a female victim is harassed in such sex-specific and derogatory terms . . . as to make it clear that the harasser is motivated by a general hostility of women in the workplace."); *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 332-33 (4th Cir. 2003) (finding sex-based

harassment where plaintiff's male coworkers maintained conversation around her where they portrayed women as being sexually subordinate to men).

But the "head of household" comment does not transform the remaining alleged hostile acts into sex-based acts that can form the factual basis for a hostile work environment claim. The Court is not required to find that all hostile actions that Schubin experienced were made because of her sex, even if some of the boorish and ignorant comments can be reasonably interpreted to have been sex-based. *See Brown v. Bratton*, No. 21-1998, 2022 WL 17336572, at *7 (4th Cir. Nov. 30, 2022) (finding that plaintiff's allegation about his employer's unfair work schedule choices were not based on race but that his employer's use of racial slurs was based on race).

Schubin does not plead that Perez's yelling and accusation contained any sex-related overtones or undertones, and it is not reasonable to infer that those actions were sex-based. "[I]n the absence of evidence suggesting that a plaintiff's sex was relevant, the fact that both [sexes] are treated similarly, if badly, does give rise to the inference that their mistreatment shared a common cause that was unrelated to sex." *Brown v. Henderson*, 257 F.3d 246, 253 (2d Cir. 2001); *see Lambert v. Mecklenburg Cnty.*, No. 3:04CV628-H, 2006 WL 2620307, at *8 (W.D.N.C. Sept. 12, 2006) (finding no basis in sex where the "[defendant] treated both men and women poorly without regard to gender" (citing *Brown*, 257 F.3d at 254)). Here, Schubin does not allege that the yelling started because of her sex or that the yelling included sex-specific remarks. In fact, Schubin alleges the opposite. Schubin established that the general yelling began in response to her receiving her MBA; she does not present any facts to suggest a gendered cause. *Id.* ¶ 35. Similarly, in Schubin's lone example of an incident where Perez leveled hostile accusations at her, Schubin does not relate the allegation to her sex. *Id.* ¶ 53. In fact, she alleges that when Perez accused her of stealing the company, he *also* accused Waschitzki. *Id.* Therefore, the accusations related to Perez's yelling

8

do not support a hostile work environment claim because the facts alleged do not show, or lead to a reasonable inference that, they were based on sex.

Ultimately, Schubin established the second element solely based on Perez's head of household comment. However, since *only* the head of household comment was based on sex, it is the only allegation that can be considered for element three.

### 2. Element Three: Severe or Pervasive

Schubin must overcome a "high bar in order to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). In determining whether the "severe or pervasive" test has been met, the Court considers the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc*, 510 U.S. 17, 23 (1993). To show pervasiveness and severity, Schubin must provide specific evidentiary support with allegations "substantiated by accounts of specific dates, times, or circumstances." *EEOC v. Xerxes Corp.*, 639 F.3d 658, 676 (4th Cir. 2011) (quoting *Carter v. Ball*, 33 F.3d 450, 461-62 (4th Cir. 1994)). Since Schubin's allegations regarding Perez's yelling and accusations are not based in sex, the Court only examines whether the one remaining factual allegation—Perez's "head of household" comment—can meet the "severe or pervasive" test.

Schubin's allegation about Perez's "head of household" comment does not substantiate her claim with enough specificity.[3] In attempting to quantify the frequency of that comment, Schubin

---

[3] Even if the Court concluded that Perez's yelling and accusations were based on sex, those allegations would also falter due to a lack of specificity. Schubin does not recount any specific incident or time where Perez yelled at her. Additionally, Schubin states that Perez would frequently accuse her of things throughout her employment. Dkt. 1 ¶ 31. Schubin once again does not recount a specific incident or time this occurred except for one allegation. *Id.* Typically,

9

alleges that Perez made the statement "throughout her employment." Dkt. 1 ¶ 31. Stating the conduct happened "throughout her employment" does not paint a sufficient picture of the general frequency or context of the comment. Therefore, the vagueness of the allegation makes it nearly impossible for the Court to determine the conduct's degree of pervasiveness. That ambiguity weighs against a finding of severity and pervasiveness. *See Skipper v. Giant Foods, Inc.*, 68 F. App'x 393, 399 (4th Cir. 2003) (finding that the plaintiff insufficiently substantiated his hostile work environment claim because he did not describe the context in which he saw racist graffiti and could not name the employees he heard using racial epithets).[4]

The "head of household" comment is also not particularly severe. "Offensive epithets, simple teasing, and offhand remarks will not satisfy the [severe or pervasive standard]." *Watson*, 2020 WL 1237012, at *5 (citing *Boyer-Liberto*, 786 F.3d at 277). While the "head of household" comment is inappropriate, hostile work environment claims do not exist to create a "general civility code." *Id.* (quoting *Oncale*, 523 U.S. at 80). It is not reasonable to infer the "head of household" comment *alone* would create an objectively hostile work environment that was riddled with severe abuse, as the comment is neither humiliating nor threatening. *Compare Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010) (finding that a reasonable jury could conclude that persistent references to females as "bitches," "prostitutes," and other explicit remarks was

---

successful hostile work environment claims involve repeated conduct. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). The sole-specific allegation, which involved an isolated incident of Perez accusing Schubin and Waschitzki of trying to steal the company, is insufficiently severe or pervasive to support a claim of actionable harassment. Dkt. 1 ¶ 53.

[4] Schubin attempts to provide more context by claiming that Perez would make the "head of household" comments when she would ask for her salary to be brought in line with Cashman. The Court does not consider Schubin's addition from her briefing. It is well-settled that parties may not amend their complaints by filing an opposition. *S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("[P]arties cannot amend their complaints through briefing or oral advocacy.").

sufficiently severe), *and Parker v. Reema Consulting Servs.*, 915 F.3d 297, 304-05 (4th Cir. 2019) (finding severe abuse where coworkers spread rumors about a female employee sleeping around the office which caused other coworkers to harass and exclude her), *with Martin v. MCAP Christiansburg, LLC*, 143 F. Supp. 3d 442, 446 (W.D. Va. Oct. 28, 2015) (finding insufficient severity for plaintiff's allegations that defendant gave her flowers and coffee, left her voice messages, and sent her cards but finding sufficient severity where defendant physically contacted her or called her "a whore" or "a slut")*, and Wiley v. Austin*, No. GJH-21-2767, 2023 WL 348966, at *4 (D. Md. Jan. 20, 2023) (finding insufficiently severe harassment where the defendant accused plaintiff of doing her job poorly and in a single incident shoved books at her).

In sum, due to Schubin's lack of specificity regarding her one sex-based allegation, the "head of household" comment, Schubin fails to argue that the comment was sufficiently pervasive to save her claim. Since the "head of household" comment, when viewed from the four corners of the complaint, appears to be infrequent, the Court then analyzes whether the comment was sufficiently severe to make up for the lack of pervasiveness. While a single, sufficiently severe incident can form the basis of a hostile work environment claim, that incident must be particularly egregious to suffice. *Boyer-Liberto*, 786 F.3d at 268, 277 (finding sufficient severity where a white supervisor called her African American employee a "porch monkey" on two occasions). The Court finds that the "head of household" comment does not invoke the same humiliating or threatening harassment found in case law where a defendant used language that contained a profane slur or a sexually explicit phrase. Accordingly, Schubin's hostile work environment claim cannot proceed beyond the motion to dismiss stage.[5]

---

[5] Because Schubin failed to establish the third element, the Court need not consider whether Schubin's allegations survive the fourth element.

## IV. CONCLUSION

For the foregoing reasons it is hereby ORDERED that Defendant's Partial Motion to Dismiss (Dkt. 6) is GRANTED.

The Clerk is directed to enter Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for Plaintiff's hostile work environment claim.

IT IS SO ORDERED.

Alexandria, Virginia

August 16, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge